# EXHIBIT A

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts The Superior Court |
|---|---|---|

| PLAINTIFF(S): | Francine A. Nicholson | COUNTY | Suffolk |
|---|---|---|---|
| ADDRESS: | 55 Byron Avenue, Brockton, MA 02301 | | |
| | | DEFENDANT(S): | Massachusetts Bay Transportation Authority (MBTA) |
| ATTORNEY: | Brendan P. Slean | | |
| ADDRESS: | Lawson & Weitzen, LLP | ADDRESS: | 10 Park Plaza, Suite 5610, Boston, Suffolk County, MA 02116 |
| 88 Black Falcon Ave., Suite 345, Boston, MA 02210 | | | |
| BBO: | 699253 | | |

### TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B22 | Employment Discrimination | F | ☒ YES   ☐ NO |

*If "Other" please describe:

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**
(attach additional sheets as necessary)

A. Documented medical expenses to date:
  1. Total hospital expenses ............................................................................................................ $ _____
  2. Total doctor expenses ............................................................................................................. $ _____
  3. Total chiropractic expenses .................................................................................................... $ _____
  4. Total physical therapy expenses ............................................................................................ $ _____
  5. Total other expenses (describe below) ................................................................................... $ 50,000.00
                                                                                                Subtotal (A): $ _____
Plaintiff suffered from extreme emotional distress and PTSD as a result of action and conduct by the Defendant

B. Documented lost wages and compensation to date ................................................................. $ _____
C. Documented property damages to dated ................................................................................. $ _____
D. Reasonably anticipated future medical and hospital expenses ............................................... $ _____
E. Reasonably anticipated lost wages ........................................................................................... $ _____
F. Other documented items of damages (describe below) ............................................................ $ _____

G. Briefly describe plaintiff's injury, including the nature and extent of injury:
Plaintiff has suffered significant damages and emotional distress, including a diagnosis of PTSD, as a result of her claims
for discrimination and hostile work environment by her employer, the Massachusetts Bay Transport Authority.

TOTAL (A-F):$ 50,000.00

**CONTRACT CLAIMS**
(attach additional sheets as necessary)

Provide a detailed description of claims(s):

TOTAL: $ _____

Signature of Attorney/Pro Se Plaintiff: X _____  Date: 08/05/2022

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney of Record:  X _____  Date: 08/05/2022

# CIVIL ACTION COVER SHEET INSTRUCTIONS
## SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

**AC Actions Involving the State/Municipality \***

- AA1 Contract Action involving Commonwealth, Municipality, MBTA, etc.   (A)
- AB1 Tortious Action involving Commonwealth, Municipality, MBTA, etc.   (A)
- AC1 Real Property Action involving Commonwealth, Municipality, MBTA etc.  (A)
- AD1 Equity Action involving Commonwealth, Municipality, MBTA, etc.   (A)
- AE1 Administrative Action involving Commonwealth, Municipality, MBTA,etc. (A)

**CN Contract/Business Cases**

- A01 Services, Labor, and Materials   (F)
- A02 Goods Sold and Delivered   (F)
- A03 Commercial Paper   (F)
- A04 Employment Contract   (F)
- A06 Insurance Contract   (F)
- A08 Sale or Lease of Real Estate   (F)
- A12 Construction Dispute   (A)
- A14 Interpleader   (F)
- BA1 Governance, Conduct, Internal Affairs of Entities   (A)
- BA3 Liability of Shareholders, Directors, Officers, Partners, etc.   (A)
- BB1 Shareholder Derivative   (A)
- BB2 Securities Transactions   (A)
- BC1 Mergers, Consolidations, Sales of Assets, Issuance of Debt, Equity, etc.  (A)
- BD1 Intellectual Property   (A)
- BD2 Proprietary Information or Trade Secrets   (A)
- BG1 Financial Institutions/Funds   (A)
- BH1 Violation of Antitrust or Trade Regulation Laws   (A)
- A99 Other Contract/Business Action - Specify  (F)

\* Choose this case type if ANY party is the Commonwealth, a municipality, the MBTA, or any other governmental entity UNLESS your case is a case type listed under Administrative Civil Actions (AA).

† Choose this case type if ANY party is an incarcerated party, UNLESS your case is a case type listed under Administrative Civil Actions (AA) or is a Prisoner Habeas Corpus case (E97).

**ER Equitable Remedies**

- D01 Specific Performance of a Contract   (A)
- D02 Reach and Apply   (F)
- D03 Injunction   (F)
- D04 Reform/ Cancel Instrument   (F)
- D05 Equitable Replevin   (F)
- D06 Contribution or Indemnification   (F)
- D07 Imposition of a Trust   (A)
- D08 Minority Shareholder's Suit   (A)
- D09 Interference in Contractual Relationship   (F)
- D10 Accounting   (A)
- D11 Enforcement of Restrictive Covenant   (F)
- D12 Dissolution of a Partnership   (F)
- D13 Declaratory Judgment, G.L. c.231A   (A)
- D14 Dissolution of a Corporation   (F)
- D99 Other Equity Action   (F)

**PA Civil Actions Involving Incarcerated Party** †

- PA1 Contract Action involving an Incarcerated Party   (A)
- PB1 Tortious Action involving an Incarcerated Party   (A)
- PC1 Real Property Action involving an Incarcerated Party   (F)
- PD1 Equity Action involving an Incarcerated Party   (F)
- PE1 Administrative Action involving an Incarcerated Party   (F)

**TR Torts**

- B03 Motor Vehicle Negligence - Personal Injury/Property Damage   (F)
- B04 Other Negligence - Personal Injury/Property Damage   (F)
- B05 Products Liability   (A)
- B06 Malpractice - Medical / Wrongful Death   (A)
- B07 Malpractice - Other   (A)
- B08 Wrongful Death, G.L. c.229 §2A   (A)
- B15 Defamation   (A)
- B19 Asbestos   (A)
- B20 Personal Injury - Slip & Fall   (F)
- B21 Environmental   (F)
- B22 Employment Discrimination   (F)
- BE1 Fraud, Business Torts, etc.   (A)
- B99 Other Tortious Action   (F)

**RP Real Property**

- C01 Land Taking   (F)
- C02 Zoning Appeal, G.L. c. 40A   (F)
- C03 Dispute Concerning Title   (F)
- C04 Foreclosure of a Mortgage   (X)
- C05 Condominium Lien & Charges   (X)
- C99 Other Real Property Action   (F)

**MC Miscellaneous Civil Actions**

- E18 Foreign Discovery Proceeding   (X)
- E97 Prisoner Habeas Corpus   (X)
- E22 Lottery Assignment, G.L. c. 10 §28   (X)

**AB Abuse/Harassment Prevention**

- E15 Abuse Prevention Petition, G.L. c. 209A   (X)
- E21 Protection from Harassment, G.L. c. 258E(X)

**AA Administrative Civil Actions**

- E02 Appeal from Administrative Agency, G.L. c. 30A   (X)
- E03 Certiorari Action, G.L. c.249 §4   (X)
- E05 Confirmation of Arbitration Awards   (X)
- E06 Mass Antitrust Act, G. L. c. 93 §9   (A)
- E07 Mass Antitrust Act, G. L. c. 93 §8   (X)
- E08 Appointment of a Receiver   (X)
- E09 Construction Surety Bond, G.L. c. 149 §§29, 29A   (A)
- E10 Summary Process Appeal   (X)
- E11 Worker's Compensation   (X)
- E16 Auto Surcharge Appeal   (X)
- E17 Civil Rights Act, G.L. c.12 §11H   (A)
- E24 Appeal from District Court Commitment, G.L. c.123 §9(b)   (X)
- E25 Pleural Registry (Asbestos cases)
- E94 Forfeiture, G.L. c265 §56   (X)
- E95 Forfeiture, G.L. c.94C §47   (F)
- E99 Other Administrative Action   (X)
- Z01 Medical Malpractice - Tribunal only, G.L. c. 231 §60B   (F)
- Z02 Appeal Bond Denial   (X)

**SO Sex Offender Review**

- E12 SDP Commitment, G.L. c. 123A §12   (X)
- E14 SDP Petition, G.L. c. 123A §9(b)   (X)

**RC Restricted Civil Actions**

- E19 Sex Offender Registry, G.L. c.6 §178M   (X)
- E27 Minor Seeking Consent, G.L. c.112 §12S (X)

**TRANSFER YOUR SELECTION TO THE FACE SHEET**

**EXAMPLE:**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | __F__ | ☒ YES   ☐ NO |

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF -** The plaintiff shall set forth, on the face of the civil action cover sheet (or attach additional sheets as necessary), a statement specifying the facts on which the plaintiff relies to determine money damages. A copy of such civil action cover sheet, including the statement as to the damages, shall be served with the complaint. **A clerk-magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or pro se party.**

**DUTY OF THE DEFENDANT -** If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with his/her answer a statement specifying the potential damages which may result if the plaintiff prevails.

**A CIVIL COVER SHEET MUST BE FILED WITH EACH COMPLAINT.
FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY
MAY RESULT IN DISMISSAL OF THIS ACTION.**

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss

SUPERIOR COURT
CIVIL ACTION NO.

---

FRANCINE A. NICHOLSON

       Plaintiff,

v.

MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY

       Defendant.

---

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

## **INTRODUCTION**

Plaintiff, Francine A. Nicholson ("Ms. Nicholson"), hereby files this action against Defendant, Massachusetts Bay Transportation Authority ("MBTA"), for third-party sexual harassment liability due to the MBTA's failure to take prompt remedial action when Ms. Nicholson reported the pervasive harassment she was facing by MBTA customer, Jeffrey Ferrari ("Mr. Ferrari"). Ms. Nicholson brings claims for discrimination based on gender/sexual harassment in violation of M.G.L. c. 151B, discrimination and a failure to engage in an interactive dialogue and provide a reasonable accommodation based on handicap in violation of M.G.L. c. 151B, hostile work environment in violation of M.G.L. c. 151B, retaliation in violation of M.G.L. c. 151B, and a violation of the Americans with Disability Act, 42 U.S.C. § 12101 et seq. including a failure to engage in an interactive dialogue and/or failure to provide a reasonable accommodation. As a direct and proximate result of the MBTA's actions, Ms. Nicholson now seeks to secure a judgment in her favor, as she has and continues to suffer significant damages and emotional distress.

1

## JURISDICTION AND VENUE

1. The Court has jurisdiction over the subject matter of this action under M.G.L. c. 151B, § 9.

2. The Court may exercise personal jurisdiction over Defendant, MBTA, pursuant to M.G.L. c. 223A, § 2, as Defendant has its usual place of business in Massachusetts.

3. The Court may also exercise personal jurisdiction over Defendant, MBTA, in accordance with the Due Process Clause of the United States Constitution.

4. Venue is appropriate in this judicial district under M.G.L. c. 223, § 1 and M.G.L. c. 151B, § 9, because the offices of Defendant, MBTA, are located in Suffolk County. Moreover, venue is appropriate in this judicial district because the alleged acts of discrimination occurred in Suffolk County.

## ADMINISTRATIVE PREREQUISITES

5. On January 2, 2020, Plaintiff, Ms. Nicholson, filed timely charges with the Massachusetts Commission Against Discrimination ("MCAD") alleging sex discrimination.

6. Pursuant to M.G.L. c. 151B, § 9, Plaintiff, Ms. Nicholson, has the right to file this action in Superior Court because ninety (90) days have elapsed since her filing with the MCAD. Moreover, Ms. Nicholson properly withdrew her complaint with the MCAD, notifying the MCAD that she intended on filing this matter in civil court.

## PARTIES

7. Plaintiff, Francine A. Nicholson ("Ms. Nicholson"), is an individual who resides at 55 Byron Avenue, Brockton, Plymouth County, Massachusetts 02301.

8. Defendant, Massachusetts Bay Transportation Authority ("MBTA"), is a "public employer" pursuant to the Massachusetts Tort Claims Act, M.G.L. c. 258, § 1, with a its principal place

2

of business located at 10 Park Plaza, Suite 5610, Boston, Suffolk County, Massachusetts 02116.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

*Mr. Ferrari's Stalking and Harassment of Ms. Nicholson during her Employment with MBTA*

9. Ms. Nicholson has been employed as a Motorperson on the Green Line for the MBTA since June 2015. At all times material hereto, Ms. Nicholson's shift consisted of working the Green Line from 3:30 p.m. to 1:00 a.m.

10. Beginning in January 2018, Ms. Nicholson was continuously and publicly harassed by a MBTA customer, Jeffrey Ferrari ("Mr. Ferrari").

11. Specifically, on or about January 22, 2018, Ms. Nicholson's supervisor, Tamieka Thibodeaux ("Ms. Thibodeaux"), the head of Green Line Operations, called Ms. Nicholson and asked if she knew of a man (Mr. Ferrari) in Dunkin Donuts and if Ms. Nicholson was friends with him. Ms. Thibodeaux advised Ms. Nicholson that Mr. Ferrari had posted on Facebook that he wanted Ms. Nicholson to be his valentine.

12. Ms. Nicholson advised Ms. Thibodeaux that there was a man, Mr. Ferrari, who was overly complimentary of her appearance, but that he kept it cordial.

13. Ms. Thibodeaux asked Ms. Nicholson if she needed to contact the Employee Assistance Program on Ms. Nicholson's behalf. Not aware that Mr. Ferrari had been stalking her, let alone the severity of Mr. Ferrari's stalking, Ms. Nicholson did not feel the need to contact the Employee Assistance Program at the time.

14. The next day, on January 23, 2018, Detective Sean Conway ("Detective Conway") called Ms. Nicholson and advised that he went to the Dunkin Donuts that morning and, along with his partner Detective Michael Rutledge ("Detective Rutledge"), confronted Mr. Ferrari.

15. Prior to confronting Mr. Ferrari, the detectives overheard Mr. Ferrari speaking with an MBTA employee about Ms. Nicholson's appearance and sexual attractiveness.

16. The detectives made it clear to Mr. Ferrari that Ms. Nicholson had no interest in him and that he should not contact Ms. Nicholson directly or through anyone else.

17. Mr. Ferrari stated that he understood these conditions, but also informed the detectives that he was suffering from mental illness and had not been on his medication for several weeks.

18. Afterwards, the detectives asked Ms. Nicholson whether she would want to press charges against Mr. Ferrari, to which Ms. Nicholson replied that that would not be necessary. However, Ms. Nicholson made this determination without knowing the full extent of Mr. Ferrari's stalking and harassment.

19. As a result, Detective Conway advised Ms. Nicholson to contact an official to call the police when Mr. Ferrari is present at one of her stops.

20. However, when Mr. Ferrari has been present at Ms. Nicholson's stops, Ms. Nicholson has been unable to call the police because she cannot have her cellphone with her on MBTA property or while on duty per MBTA policies.

21. Notably, the MBTA radio on the train is not a viable option for Ms. Nicholson when it comes to calling for help as there are too many people on the frequency at one time.

22. Each time an incident would occur, such as when Mr. Ferrari followed Ms. Nicholson or showed up at her stop, Ms. Nicholson requested for the MBTA to call the police for help.

23. However, in response to Ms. Nicholson's requests for help, the MBTA would advise Ms. Nicholson to hide in the booth in the train and continue with the trip.

24. Mr. Ferrari continued to frequent MBTA property so much so that Ms. Nicholson had to ask a male colleague to regularly escort her to the restrooms out of fear that Mr. Ferrari would physically assault her.

25. As Mr. Ferrari's stalking and harassment of Ms. Nicholson continued, Ms. Nicholson requested that the MBTA transfer her from her current route to a new route away from Mr. Ferrari.

26. However, Ms. Nicholson was advised by her union, Boston Carmen's Union, Division #589, that she would need to use the same process as everyone else to change train routes.

27. Ms. Thibodeaux changed Ms. Nicholson's route to the Boston College Green Line route which was seen as a simple transfer rather than as a response to the sexual harassment by Mr. Ferrari.

28. However, the Boston College route is a split shift which required Ms. Nicholson to spend some of her shift in the same area as where she was previously stalked and harassed by Mr. Ferrari at Cleveland Circle.

29. Even after the route change, Mr. Ferrari's stalking and harassment of Ms. Nicholson continued through 2018, which forced Ms. Nicholson to request yet another route transfer.

30. Due to the lack of support from the MBTA, Ms. Nicholson was forced to select a route in Lechmere to avoid Mr. Ferrari even through it meant lower pay, an additional fourteen miles added to her commute, and increased difficulty for her to attend her group for new widows of war veterans.

31. After her time on the Lechmere route, Ms. Nicholson was forced to select a Cleveland Circle route since that was the only available option for her rank.

32. On or about September 11, 2019, Ms. Nicholson witnessed Mr. Ferrari running towards her stop at the Cleveland Circle area. Once Ms. Nicholson began operating her train, Mr. Ferrari was seen running to the next stop to await Ms. Nicholson.

33. As a result, Ms. Nicholson called the MBTA Transit Police ("Transit Police"), and Officer Daniel Morse ("Officer Morse") responded with MBTA Inspector Fred Holt ("Mr. Holt"). However, Mr. Ferrari fled the area before the police were able to arrive.

34. Distressed about this incident, Ms. Nicholson approached her supervisor, Temasha Allen ("Ms. Allen"), to request a transfer.

35. Ms. Nicholson explained the incident involving Mr. Ferrari to Ms. Allen and advised that she was scared for her life.

36. Despite Ms. Nicholson's concerns, Ms. Allen responded that she could not assist Ms. Nicholson with a transfer.

37. Notably, Ms. Nicholson later found out, when she requested her personnel file on September 17, 2019, that MBTA coworkers were sharing information about Ms. Nicholson's whereabouts with Mr. Ferrari.

38. Moreover, Ms. Nicholson also found out that the MBTA and her supervisor, Alicia Gomes ("Ms. Gomes"), Ms. Thibodeaux (Head of Green Line Operations), and Margaret Fong ("Ms. Fong") (Green Line Superintendent), had been aware of Mr. Ferrari's actions, specifically "threats of a sexual nature" and had not given Ms. Nicholson this information. Additional supervisory level personnel, including Barrando Butler, Virginia Turner, Tierra Jenkins, Mark Gillespie and Kirk Donovan were also recipients of e-mail communications as early as January 2018 concerning Mr. Ferrari's interactions with Ms. Nicholson.

### *Ms. Nicholson's Initial Leave of Absence and Mr. Ferrari's Criminal Matter*

39. On or about September 20, 2019, Ms. Nicholson took a leave of absence from her employment with the MBTA under FMLA.

40. On or about September 27, 2019, Ms. Nicholson obtained a Harassment Prevention Order against Mr. Ferrari from the Brockton District Court.

41. On or about October 10, 2019, Ms. Nicholson was officially diagnosed with PTSD as a result of working in the aforementioned conditions involving Mr. Ferrari's continued stalking and sexual harassment of Ms. Nicholson. However, Ms. Nicholson had been dealing with the symptoms of PTSD for over a year before being officially diagnosed.

42. On or about October 11, 2019, the Brockton District Court extended the Harassment Prevention Order against Mr. Ferrari for an additional year.

43. On or about November 4, 2019, a criminal harassment complaint was issued against Mr. Ferrari in Brookline District Court.

44. On or about November 24, 2021, the final disposition hearing on the criminal harassment case against Mr. Ferrari was conducted, in which Mr. Ferrari was sentenced to two and half years in jail.

45. The final court date took place on or about February 22, 2022. Mr. Ferrari was sentenced to two and a half years probation and must wear an ankle monitor for two and a half years.

### *Ms. Nicholson's MCAD Complaint and the MBTA's Failure to Accommodate Ms. Nicholson*

46. On or about January 2, 2020, Ms. Nicholson filed a complaint with the Massachusetts Commission Against Discrimination ("MCAD") alleging employment discrimination against the MBTA, styled *Francine Nicholson v. Massachusetts Bay Transportation Authority*, No. 20BEM00008.

47. In her complaint with the MCAD, Ms. Nicholson alleged that the MBTA failed to properly accommodate her with regard to the stalking and harassment she endured by Mr. Ferrari.

48. On or about February 28, 2020, the MBTA filed its position statement in response to Ms. Nicholson's complaint, setting forth that Mr. Ferrari's conduct did not occur on MBTA property and that the MBTA took prompt and remedial action on behalf of Ms. Nicholson.

49. At the time of the filing of her complaint with the MCAD, Ms. Nicholson had and continues to be on a leave of absence from the MBTA as a result of the stalking and harassment by Mr. Ferrari.

50. In a letter dated July 29, 2020, the MBTA requested that Ms. Nicholson return to work on August 31, 2020, and explicitly rejected the proper medical documentation requesting that Ms. Nicholson's leave last until October 30, 2020.

51. Moreover, the MBTA's letter failed to respond to Ms. Nicholson's several requests for reasonable accommodations in order for her to return to work in a safe and comfortable manner.

52. Specifically, the MBTA's demands that Ms. Nicholson return to work failed to recognize that a return to work is inappropriate due to the ongoing severity of Ms. Nicholson's PTSD.

53. In a letter dated August 20, 2020, Ms. Nicholson demanded a further extension of her continuous leave of absence from the MBTA due to her PTSD. Ms. Nicholson's original leave of absence was granted on several occasions by the MBTA's Leave Management Team ("LMT") in the summer and fall of 2020. However, the MBTA repeatedly pressured Ms. Nicholson to return to work prematurely in light of the severity of her PTSD symptoms.

54. Moreover, in the letter dated August 20, 2020, Ms. Nicholson requested that the MBTA engage in an interactive dialogue to determine a reasonable accommodation to facilitate her return to work.

55. In response, LMT granted Ms. Nicholson a further extension of her continuous leave under the Americans with Disabilities Act ("ADA") until January 8, 2021.

56. Upon Ms. Nicholson's further requests and presentation of appropriate medical documentation from her treating providers, LMT granted extensions of Ms. Nicholson's leave of absence under the ADA and FMLA.

57. The MBTA, however, continued to pressure Ms. Nicholson to return to work through the present, notwithstanding the MBTA's refusal and failure to grant Ms. Nicholson a reasonable and necessary accommodation for her disability, namely PTSD, to facilitate her successful return to work.

58. Ms. Nicholson returned to work from her leave of absence in mid-June 2022 after being medically cleared to do so by her own medical professionals, as well as the MBTA's clinical staff.

59. The MBTA has and continues to refuse to engage in an interactive dialogue and provide a reasonable accommodation to Ms. Nicholson for her disability, in the form of certain protocols and procedures that were designed to keep her safe in the workplace and thereby mitigate the symptoms of her PTSD.

## CAUSES OF ACTION

### COUNT I – DISCRIMINATION BASED ON GENDER/SEXUAL HARASSMENT IN VIOLATION OF M.G.L. C. 151B

60. Ms. Nicholson repeats and realleges the allegations contained in Paragraphs 1 through 59 and incorporates them by reference as if fully set forth herein.

61. Pursuant to G.L. c. 151B, § 4(1), Massachusetts prohibits sexual discrimination in the workplace. Sexual harassment in considered a form of sexual discrimination.

62. An employer who is put on notice of sexual harassment in the workplace, either caused by supervisors, coworkers or customers, and who fails to take adequate steps to remedy the situation, may be liable for sexual harassment pursuant to M.G.L. c. 151B.

63. An employer can be held liable for failure to respond reasonably to acts of sexual harassment of which it was aware or reasonably should have been aware, even though the acts were perpetrated by someone who was not an agent or employee of employer.

64. The MBTA passively tolerated the creation of a hostile work environment by its customer, Mr. Ferrari's, stalking and sexual harassment of Ms. Nicholson while she was on duty and on MBTA property.

65. The MBTA implicitly ratified Mr. Ferrari's misconduct by failing to take reasonable and prompt action to remedy the sexual harassment that Ms. Nicholson was enduring, which thereby encouraged Mr. Ferrari to persist in such misconduct.

66. The MBTA's acquiescence on the part of Mr. Ferrari's misconduct effectively communicated to Ms. Nicholson that the MBTA is not concerned about the hostile work environment in which Ms. Nicholson must work, which is further supported by the MBTA's persistent demands that Ms. Nicholson return to her employment immediately.

67. The MBTA's persistent demands that Ms. Nicholson return to her employment immediately can only operate to exacerbate the adverse effects of that hostile work environment that Ms. Nicholson had endured for a substantial period of time.

68. Simply put, the MBTA was on notice and not only tolerated, but failed to take any action to prevent the sexual harassment of Ms. Nicholson by Mr. Ferrari in its workplace.

69. The MBTA's failure to comply with G.L. c. 151B entitles Ms. Nicholson to recover her lost wages, emotional distress, reasonable attorneys' fees, costs, interest, expenses, and all statutory damages and relief.

70. Ms. Nicholson has been damaged in an amount to be proven at trial as a result of the MBTA's discrimination.

## COUNT II – DISCRIMINATION BASED ON HANDICAP IN VIOLATION OF M.G.L. C. 151B

71. Ms. Nicholson repeats and realleges the allegations contained in Paragraphs 1 through 70 and incorporates them by reference as if fully set forth herein.

72. Massachusetts prohibits handicap discrimination in the workplace. See M.G.L. c. 151B, § 4(16). Post-traumatic stress disorder is considered a form of mental impairment and handicap.

73. A "qualified handicapped person" is "one who is capable of performing the essential functions of a particular job, or who would be capable of performing the essential functions of a particular job with reasonable accommodation."

74. The MBTA has discriminated against Ms. Nicholson on the basis of her mental handicap, namely her PTSD.

75. In other words, Ms. Nicholson is handicapped and, with a reasonable accommodation, could return to her job to successfully perform the essential functions of her job as a Motorperson.

76. However, the MBTA failed to engage in an interactive process when Ms. Nicholson requested a reasonable accommodation in violation of M.G.L. c. 151B.

77. The MBTA demanded and put significant amounts of pressure on Ms. Nicholson to return to work amid her significant struggles with PTSD or otherwise lose her employment as a Motorperson.

78. The MBTA continued to pressure Ms. Nicholson to return to work, notwithstanding the MBTA's refusal and failure to grant Ms. Nicholson a reasonable and necessary accommodation for her disability, namely PTSD, to facilitate her successful return to work.

79. Even after her return to work in mid-June 2022, the MBTA persisted in its refusal to engage in an interactive dialogue and provide a reasonable accommodation to Ms. Nicholson for her disability, in the form of certain protocols and procedures that were designed to keep her safe in the workplace and thereby mitigate the symptoms of her PTSD, which, in turn, allows her to perform the essential functions of her position as a Motorperson employed by the MBTA.

80. The MBTA's failure to comply with M.G.L. c. 151B entitles Ms. Nicholson to recover her lost wages, emotional distress, reasonable attorneys' fees, costs, interest, expenses, and all statutory damages and relief. Ms. Nicholson has been damaged in an amount to be proven at trial as a result of the MBTA's discrimination.

## COUNT III – HOSTILE WORK ENVIRONMENT IN VIOLATION OF G.L. C. 151B

81. Ms. Nicholson repeats and realleges the allegations contained in Paragraphs 1 through 80 and incorporates them by reference as if fully set forth herein.

82. An individual establishes that a hostile work environment is present when it is shown that the workplace was pervaded by harassment or abuse, with the resulting intimidation, humiliation, and stigmatization, and posed a formidable barrier to the full participation of an individual in the workplace.

83. The MBTA's work environment with respect to Ms. Nicholson was pervaded by sexual harassment, with the resulting intimidation, humiliation, and stigmatization, posing a formidable barrier to Ms. Nicholson's full participation in the workplace.

84. The MBTA's acquiescence and toleration of Mr. Ferrari's misconduct has created a formidable barrier to Ms. Nicholson's full participation in the workplace, which is evidenced by Ms. Nicholson's PTSD diagnosis.

85. Moreover, the MBTA's refusal to provide a reasonable accommodation for Ms. Nicholson to safely return to work continues to create a formidable barrier to Ms. Nicholson's full participation in the workplace in light of her PTSD.

86. The hostile work environment created by Ms. Nicholson entitles Ms. Nicholson to recover her lost wages, emotional distress, reasonable attorneys' fees, costs, interest, expenses, and all statutory damages and relief.

87. Ms. Nicholson has been damaged in an amount to be proven at trial as a result of the MBTA's conduct.

## COUNT IV – VIOLATION OF THE AMERICANS WITH DISABILITY ACT, 42 U.S.C. § 12101 ET SEQ.

88. Ms. Nicholson repeats and realleges the allegations contained in Paragraphs 1 through 84 and incorporates them by reference as if fully set forth herein.

89. During all times material hereto, the MBTA was an employer under the American with Disabilities Act, 42 U.S.C. § 12101.

90. Ms. Nicholson suffers from a mental handicap, namely her PTSD, which is an impairment that substantially limits one or more of her major life activities, including her ability to safely return to work and perform the essential functions of her job. Accordingly, Ms. Nicholson is disabled under the ADA.

91. Ms. Nicholson is a qualified employee and is capable of performing the essential functions of her job with one or more reasonable accommodations.

92. Ms. Nicholson disclosed her mental handicap, namely her PTSD, to the MBTA, and or the MBTA was aware of Ms. Nicholson's mental handicap, and or the MBTA classified Ms. Nicholson as mentally handicapped.

93. The MBTA has demanded and put significant amounts of pressure on Ms. Nicholson to return to work amid her significant struggles with PTSD or otherwise lose her employment as a Motorperson.

94. The MBTA has also failed to provide Ms. Nicholson with a reasonable accommodation in violation of U.S.C. § 12101.

95. The MBTA has failed to engage in an interactive process when Ms. Nicholson requested a reasonable accommodation in violation of U.S.C. § 12101.

96. The MBTA, however, has continued to pressure Ms. Nicholson to return to work through the present, notwithstanding the MBTA's refusal and failure to grant Ms. Nicholson a reasonable and necessary accommodation for her disability, namely PTSD, to facilitate her successful return to work.

97. The MBTA has explicitly rejected the proper medical documentation requesting further extensions of Ms. Nicholson's leave and requests for reasonable accommodations in light of the medical documentation's requests.

98. The MBTA's failure to comply with U.S.C. § 12101 entitles Ms. Nicholson to recover her lost wages, emotional distress, reasonable attorneys' fees, costs, interest, expenses, and all statutory damages and relief.

99. Ms. Nicholson has been damaged in an amount to be proven at trial as a result of the MBTA's discrimination.

## RELIEF REQUESTED

WHEREFORE, Ms. Nicholson requests that this Court enter judgment in her favor and award relief as follows:

1. Award Ms. Nicholson attorneys' fees and costs;
2. Award compensatory damages for lost wages and benefits, emotional pain and suffering, emotional distress, humiliation, anxiety, embarrassment, reputational damages, loss of enjoyment of life and out-of-pocket expenses or other financial losses, plus interest;
3. Award punitive damages pursuant to M.G.L. c. 151B, § 9;
4. Award multiple damages pursuant to M.G.L. c. 151B, § 9;
5. Order the MBTA to pay prejudgment interest from the date of the filing of the underlying complaint with the MCAD; and
6. Award such other relief as the Court deems fair and just.

## JURY DEMAND

Plaintiff Francine Nicholson hereby demands a jury trial on all counts of this Complaint.

                                            Respectfully submitted,
                                            The Plaintiff, Francine Nicholson,
                                            By Her Attorney,

Dated: August 5, 2022

                                            /s/ Brendan P. Slean
                                            Ryan A. Ciporkin (BBO #667479)
                                            Brendan Slean (BBO #667479)
                                            Lawson & Weitzen, LLP
                                            88 Black Falcon Avenue, Suite 345
                                            Boston, MA 02210-1736
                                            Telephone: (617) 430-4990
                                            Facsimile: (617) 439-3987
                                            rciporkin@lawson-weitzen.com
                                            bslean@lawson-weitzen.com